# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | | |
|---|---|---|
| BILLY WAYNE LOCKE, | ) | |
|     *Petitioner*, | ) | Case Nos. 1:19-cv-376; 1:11-cr-41 |
| | ) | |
| v. | ) | Judge Travis R. McDonough |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Magistrate Judge Susan K. Lee |
| | ) | |
|     *Respondent*. | ) | |

## MEMORANDUM OPINION

Before the Court are Petitioner's motion for a new trial (Doc. 185 in Case No. 1:11-cr-41), his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Docs. 196, 199 in Case No. 1:11-cr-41; Doc. 1 in Case No. 1:19-cv-376), and his motion requesting the status of his § 2255 motion (Doc. 197 in Case No. 1:11-cr-41). Petitioner's motion requesting the status of his § 2255 motion will be **GRANTED** to the extent that this memorandum and order responds to his § 2255 motion. However, for the reasons set forth below, his motion for a new trial (Doc. 185 in Case No. 1:11-cr-41) will be **DENIED**, and his § 2255 motion (Docs. 196, 199 in Case No. 1:11-cr-41; Doc. 1 in Case No. 1:19-cv-376) will be **DENIED IN PART**.

    **I.**    **MOTION FOR A NEW TRIAL**

Petitioner moves for a new trial arguing that the law regarding search warrants has changed since his trial. (*See generally* Doc. 185 in Case No. 1:11-cr-41.) Federal Rule of Criminal Procedure 33 provides that the court may vacate a judgment and grant a new trial upon the motion of the defendant "if the interest of justice so requires." Fed. R. Crim. P. 33(a). However, such motions, other than those based on newly discovered evidence, "must be filed

within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Here, the jury verdict finding Petitioner guilty issued on January 22, 2013 (*see* Doc. 105 in Case No. 1:11-cr-41), and Petitioner filed his motion for a new trial on July 23, 2018 (*see* Doc. 185 in Case No. 1:11-cr-41), several years after the verdict. Therefore, his motion for new trial (*id.*) is untimely under the Federal Rules of Criminal Procedure and will be **DENIED**.

## II.  MOTION TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE

Petitioner has also filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel at his resentencing hearing on February 9, 2018. (*See generally* Docs. 196, 199 in Case No. 1:11-cr-41; Doc. 1 in Case No. 1:19-cv-376.)[1]

### A.  Background

On January 22, 2013, a jury convicted Petitioner of unlawful possession of a firearm or ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g). (Doc. 105 in Case No. 1:11-cr-41.) The Court subsequently sentenced Petitioner to 235 months' imprisonment, followed by three years of supervised release, finding that he qualified for an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). (Doc. 115, at 1–3, in Case No. 1:11-cr-41.) Petitioner appealed the Court's judgment (Doc. 114), which the United States Court of Appeals for the Sixth Circuit affirmed (Doc. 126 in Case No. 1:11-cr-41). While the appeal was pending, Petitioner filed a pro se motion asking the Court to correct his sentence in light of the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), (Doc. 119 in Case No. 1:11-cr-41) and a motion to vacate, set aside, or correct his original sentence

---

[1] In this section, for convenience and ease of understanding, the Court will cite Petitioner's § 2255 motion as it appears in Case No. 1:19-cv-376, although the Court acknowledges that the motion was also filed twice in the docket for Case No. 1:11-cr-41.

pursuant to 28 U.S.C. § 2255, asserting a lack of jurisdiction, violation of his Fourth Amendment rights, and ineffective assistance of counsel (Doc. 128 in Case No. 1:11-cr-41). Later, the Federal Defender Services of Eastern Tennessee filed a supplement to Petitioner's § 2255 motion, arguing that Petitioner no long qualified as an armed career criminal following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (Doc. 151 in Case No. 1:11-cr-41). The Court granted Petitioner's § 2255 motion in light of *Johnson* and the Sixth Circuit's subsequent decision in *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017), and vacated Petitioner's original sentence. (*See* Doc. 165 in Case No. 1:11-cr-41.)

On February 9, 2018, the Court resentenced Petitioner to 118 months' imprisonment, followed by three years of supervised release. (Doc. 175, at 1–3, in Case No. 1:11-cr-41.) Without the ACCA enhancement, the Court calculated Petitioner's guidelines range as 100 to 120 months based on an offense level of 24, a criminal history category of VI, and a statutory maximum of 120 months' imprisonment. (*See* Doc. 176, at 1, in Case No. 1:11-cr-41; Doc. 182, at 4–5, in Case No. 1:11-cr-41.) Petitioner's offense level was calculated pursuant to § 2K2.1 of the sentencing guidelines (*see* Doc. 168, at 4, in Case No. 1:11-cr-41), which provides that the base offense level is 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). In Petitioner's case, the Court relied on his 2002 conviction for Tennessee Aggravated Assault and his 2005 conviction for possession of marijuana for resale in calculating his offense. (*See* Doc. 168, at 4, 8, in Case No. 1:11-cr-41.) Petitioner appealed his resentencing judgment (Doc. 177 in Case No. 1:11-cr-41), which the court of appeals again affirmed (Doc. 183 in Case No. 1:11-cr-41).

On May 29, 2019, Petitioner filed the instant motion to vacate, set aside, or correct his amended sentence pursuant to 28 U.S.C. § 2255 (Doc. 1 in Case No. 1:19-cv-376). Petitioner asserts that his counsel was ineffective at the resentencing hearing for failing to object to his offense-level calculation, failing to object to his sentence given the statutory-maximum term of incarceration, and failing to raise prosecutorial misconduct. (*See* Doc. 1, at 1–2, 4, 6, in Case No. 1:19-cv-376.) The Government has responded (Doc. 13 in Case No. 1:19-cv-376), and Petitioner's motion is now ripe for review.

## B. Analysis

### i. *Timeliness of Defendant's Motion*

Section 2255(f) is a one-year period of limitation on all petitions for collateral relief under § 2255, which runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Here, the judgment from Petitioner's resentencing became final on February 11, 2019, ninety days after he could have petitioned for certiorari to the Supreme Court for a review of the Sixth Circuit's order affirming his judgment. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004) ("When a federal criminal defendant takes a direct appeal to the court of appeals, his judgment of conviction becomes final for § 2255 purposes upon the expiration of the

4

90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed.") Petitioner filed his § 2255 motion on May 29, 2019. (*See* Docs. 196, 199 in Case No. 1:11-cr-41; Doc. 1 in Case No. 1:19-cv-376.) Therefore, the motion is timely.

### ii. *Whether the Court Should Hold an Evidentiary Hearing*

In ruling on a § 2255 motion, the Court must also determine whether to hold an evidentiary hearing. "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C. § 2255(b). "The burden for establishing entitlement to an evidentiary hearing is relatively light, and where there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Martin*, 889 F.3d at 832 (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)) (internal quotation marks omitted). While a petitioner's "mere assertion of innocence" does not entitle him to an evidentiary hearing, the Court cannot forego an evidentiary hearing unless "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id*. When the petitioner's factual narrative of events is not contradicted by the record and not inherently incredible and the government offers nothing more than contrary representations, the petitioner is entitled to an evidentiary hearing. *Id*.

In this case, the Court will hold an evidentiary hearing on the issue of whether Petitioner's base offense level was properly calculated based on his prior convictions for Tennessee aggravated assault and Tennessee possession-of-marijuana for resale. However, Petitioner is not entitled to an evidentiary hearing on his other arguments, because the record

5

conclusively establishes that he is not entitled to the relief he seeks. *See id.* Other than with respect to the limited issue concerning his offense level, the Government disputes only Petitioner's legal conclusions, and not the underlying facts.

### iii. Ineffective-Assistance-of-Counsel Claims

To collaterally attack his conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Therefore, the court should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

#### a. Failure to Object to Offense-Level Calculation

Petitioner first argues that his resentencing counsel was ineffective for failing to challenge his base offense level, as set forth in the Revised Presentence Investigation Report. (Doc. 1, at 2–3, in Case No. 1:19-cv-376.) He argues that: (1) his offense level should not have

been calculated as 24 based on U.S.S.G. § 2K2.1(a)(2) because he does not have at least two felony convictions for crimes of violence or controlled substance offenses; (2) his criminal-history category was improperly calculated; and (3) enhancing his offense level for his felon-in-possession offense based on his prior convictions violates the Double Jeopardy Clause. (*See id.*)

As explained below, Petitioner's second and third arguments are meritless, and, therefore, his counsel was not ineffective for failing to raise these arguments. However, Petitioner's argument concerning his offense-level calculation under U.S.S.G. § 2K2.1 raises factual issues warranting an evidentiary hearing.

*1. Criminal-History Category*

Petitioner argues that, since certain of his prior offenses no longer qualify as "crimes of violence" for the purposes of the ACCA, his criminal history category should be lowered. (Doc. 1, at 3, in Case No. 1:19-cv-376.) However, Petitioner's criminal-history category was not enhanced on the basis that any of his prior convictions qualified as a crime of violence under the ACCA. A federal criminal defendant's criminal history category is calculated pursuant to U.S.S.G. § 4A1.1. Petitioner received three criminal-history points for each of the felony offenses he identifies in his § 2255 motion: Tennessee aggravated battery; Tennessee evading arrest/burglary; and Tennessee aggravated assault. (Doc. 168, at 6–8, in Case No. 1:11-cr-41.) These criminal history points were assessed pursuant to U.S.S.G. § 4A1.1(a), which instructs that three criminal-history points should be added "for each prior sentence of imprisonment exceeding one year and one month." Thus, those points were assessed completely apart from the characterization of the underlying offenses as "crimes of violence." Accordingly, there is no issue with Petitioner's criminal-history category as calculated in the Revised Presentence

Investigation Report, and Petitioner's resentencing counsel was not ineffective for failing to challenge his criminal-history category.

### 2. *Double-Jeopardy Concerns*

Petitioner also argues that using his prior convictions to enhance his base offense level under U.S.S.G. § 2K2.1 violates the Double Jeopardy Clause. (Doc. 1, at 3, in Case No. 1:19-cv-376.) The Double Jeopardy Clause provides that "no person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. However, "[a]n enhanced sentence imposed on a persistent offender . . . 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" *Monge v. California*, 524 U.S. 721, 728 (1998) (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1895)). Accordingly, Petitioner's double-jeopardy argument is meritless, and his counsel was not ineffective for failing to raise this argument.

### 3. *Offense-Level Calculation Under U.S.S.G. § 2K2.1*

Pursuant to § 2K2.1 of the federal sentencing guidelines, the base offense level for offenses concerning the unlawful receipt, possession, or transportation of firearms is 24 if, at the time he committed the instant offense, the defendant had two prior felony convictions for either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 2K2.1(a)(2). If the defendant had only one prior felony conviction for a crime of violence or controlled-substance offense at the time he committed the instant offense, his base offense level is 20. *Id.* § 2K2.1(a)(4)(A).

Application note 1 to § 2K2.1 defines a "crime of violence," by reference to § 4B1.2, as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. §§ 2K2.1 cmt. n.1, 4B1.2(a). Application note 1 to § 2K2.1 further defines "controlled substance offense," also by reference to § 4B1.2, as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* §§ 2K2.1 cmt. n.1, 4B1.2(b).

To determine whether a particular offense qualifies as either a crime of violence or a controlled-substance offense under these definitions, courts generally follow the Supreme Court's ACCA precedent and apply a "categorical approach." *See United States v. Havis*, 927 F.3d 382, 384–385 (6th Cir. 2019) (applying the categorical approach to determine whether a prior conviction qualified as a controlled-substance offense under § 4B1.2); *United States v. Morris*, 885 F.3d 405, 410 (6th Cir. 2018) (applying Supreme Court ACCA precedent to determine whether an offense qualified as a crime of violence under § 4B1.2). Under the categorical approach, courts do not consider the actual conduct that resulted in a particular conviction but, instead, "look to the *least of the acts criminalized* by the elements of the statute." *Havis*, 927 F.3d at 384 (emphasis in original). "If the least culpable conduct falls within the Guidelines' definition of 'controlled substance offense,' [or 'crime of violence,'] then the statute categorically qualifies as a controlled substance offense [or crime of violence]." *Id.* at 385.

Some statutes are divisible—*i.e.*, they "set[] out one or more elements of the offense in the alternative"—while others are indivisible and do not set out alternative variants of the

9

offense. *Descamps v. United States*, 570 U.S. 254, 257–58 (2013). If the relevant statute is divisible and only some variants qualify as a crime of violence or controlled substance offense, the Court applies the "modified categorical approach." *Id.* at 257. Under the modified categorical approach, the Court may consult a "limited class of documents" to determine which alternative set of elements served as the basis for the conviction. *Id.* The Court then looks at the specific offense of conviction to determine whether it falls within the guidelines' definition of a crime of violence or controlled substance offense. *See id.* In determining which variant of the offense the petitioner was convicted of, courts may consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). In the Sixth Circuit, the district court may also examine state-court judgments, since they fall within *Shepard*'s category of "some comparable judicial record." *United States v. Adkins*, 729 F.3d 559, 568 (6th Cir. 2013) (citing *United States v. Armstead*, 467 F.3d 943, 948 (6th Cir. 2006)). The purpose of the inquiry is only to reveal whether the plea was to a qualifying version of the offense, not to reveal the facts underlying the plea. *Descamps*, 570 U.S. at 262–63 (quoting *Shepard*, 544 U.S. at 26).

In this case, the Court calculated Petitioner's offense level as 24 based on his prior convictions for Tennessee aggravated assault and possession of marijuana for resale. (Doc. 168, at 4, 8, in Case No. 1:11-cr-41.) Petitioner's Tennessee conviction for possession of marijuana for resale qualifies as a controlled-substance offense for the purposes of § 2K2.1. The guidelines definition of a controlled-substance offense encompasses offenses

> that prohibit[] . . . the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

10
Case 1:19-cv-00376-TRM-SKL   Document 16   Filed 09/23/20   Page 10 of 20   PageID #: 56

U.S.S.G. § 4B1.2(b). At the time Petitioner was convicted of his possession-for-resale offense, the governing Tennessee statute stated:

(a) It is an offense for a defendant to knowingly:

. . .

(4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.

Tenn. Code Ann. § 39-17-417(a)(4) (2005). To convict a defendant under this statute, the state must prove "that the accused knowingly possessed the controlled substance" and "that the accused intended to sell or deliver the substance." *State v. Ostein*, 293 S.W.3d 519, 529 (Tenn. 2009).

Comparing the Tennessee statute with the guidelines' definition, it is clear that they proscribe the same conduct. "As long as 'the elements of the [state] offense are of the type that would justify its inclusion within the definition of a controlled-substance offense[,]' the offense is covered." *United States v. Garth*, 965 F.3d 493, 496 (6th Cir. 2020) (quoting *United States v. Woodruff*, 735 F.3d 445, 449 (6th Cir. 2013)). "Any mere 'lexical differences' between Tennessee law and federal law are immaterial." *Id.* (quoting *United States v. Douglas*, 563 F. App'x 371, 377 (6th Cir. 2014)). On these bases, the Sixth Circuit has held that convictions under Tennessee's possession-with-intent statute categorically qualify as controlled-substance offenses under § 4B1.2(b) of the guidelines. *See id.* at 498; *Douglas*, 563 F. App'x at 377–78 (collecting cases). "There is no meaningful distinction between possessing narcotics with intent to 'manufacture, deliver or sell,' and possessing them with intent to 'manufacture, import, export, distribute, or dispense.'" *Douglas*, 563 F. App'x at 378. Accordingly, Petitioner's possession-of-marijuana-for-resale conviction qualifies as a controlled-substance offense under § 2K2.1 of the federal sentencing guidelines.

Whether Petitioner's 2002 Tennessee aggravated-assault conviction qualifies as a "crime of violence" under the guidelines is a more difficult question. Petitioner's argument that his Tennessee aggravated-assault conviction does not qualify as a crime of violence under the Sixth Circuit's decision in *United States v. McMurry*, 653 F.3d 367 (6th Cir. 2011), is inapposite because *McMurray* has since been overruled by *United States v. Verwiebe*, 874 F.3d 258 (6th Cir. 2017). *See Dillard v. United States*, 768 F. App'x 480, 487 (6th Cir. 2019) (expressly stating that *Verwiebe* overruled *McMurray*). Nevertheless, the issue warrants further examination.

A conviction may qualify as a crime of violence under §§ 4B1.2(a)(1)—the "use-of-force" clause—or (a)(2)—the "enumerated-offenses" clause. A conviction qualifies under the use-of-force clause if that conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). A conviction qualifies under the enumerated-offenses clause if it is listed in § 4B1.2(a)(2) and "fall[s] within the generic definition of that crime, which is found by surveying how the crime is described across jurisdictions, as well as consulting the Model Penal Code." *United States v. Rede-Mendez*, 680 F.3d 552, 556 (6th Cir. 2012) (citing *Taylor v. United States*, 495 U.S. 575, 598 (1990), *United States v. McFalls*, 592 F.3d 707, 716–17 (6th Cir. 2010), *overruled on other grounds by Verwiebe*, 874 F.3d 258).

At the time Petitioner was convicted of aggravated assault, the relevant statute stated:

(a) A person commits aggravated assault who:

   (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:

      (A)    Causes serious bodily injury to another; or

      (B)    Uses or displays a deadly weapon; or

(2) Recklessly commits an assault as defined in § 39-13-101(a)(1), and:

   (A)   Causes serious bodily injury to another; or

   (B)   Uses or displays a deadly weapon.

(b) A person commits aggravated assault who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect such child or adult from an aggravated assault as defined in subdivision (a)(1) or aggravated child abuse as defined in § 39-15-402.

(c) A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against such individual or individuals.

Tenn. Code Ann. § 39-13-102 (2002). The statute governing "assault" stated:

(a) A person commits assault who:

   (1) Intentionally, knowingly or recklessly causes bodily injury to another;

   (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

   (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

*Id.* § 39-13-101.

The 2002 Tennessee aggravated-assault statute is divisible between subdivisions (a), (b), and (c), and only the variant described in subdivision (a) qualifies as a violent felony under U.S.S.G. §§ 4B1.2(a)(1) or (a)(2). The variants described in subdivisions (b) and (c) do not involve "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); *see Dunlap v. United States*, 784 F. App'x 379, 387 (6th Cir. 2019) (holding that "[t]he Tennessee aggravated assault statute is divisible" and that "[w]illfully or knowingly failing or refusing to protect a child or adult from an aggravated assault does not

involve the attempted or threatened use of force as an element"); *Dillard v. United States*, 420 F. Supp. 3d 718, 733–34 (E.D. Tenn. 2019) (agreeing that the variants described in subdivisions (b) and (c) do not describe offenses that qualify as "violent felonies" for the purposes of the ACCA). Additionally, although "aggravated assault" is an enumerated offense under § 4B1.2(a)(2), Tennessee aggravated assault does not "automatically qualify as a crime of violence just because it has the same name as one of the enumerated offenses." *Rede-Mendez*, 680 F.3d at 556 (citing *Taylor*, 495 U.S. at 588–89). "Rather, the offense for which the defendant was convicted must fall within the generic definition of that crime[.]" *Id.* (citing *Taylor*, 495 U.S. at 598; *McFalls*, 592 F.3d at 716–17). The Sixth Circuit has recognized that the generic definition for "aggravated assault," as used in the guidelines, can be found in the Model Penal Code § 211.1(2):

> A person is guilty of aggravated assault if he:
>
> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or
>
> (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.

*Id.* at 557 (citations omitted). Thus, the variants described in Tenn. Code Ann. §§ 39-13-102(b) and (c) fall outside of the generic definition, and aggravated assaults committed under subdivisions (b) and (c) do not qualify as "crimes of violence" under either the use-of-physical-force prong or the enumerated-offenses prong of U.S.S.G. § 4B1.2(a).

Because the statute is divisible and some variants do not fall with in § 4B1.2(a)'s definition, the Court must apply the modified categorical approach. Here, the judgment for Petitioner's aggravated-assault conviction does not specify the particular subsection under which he was convicted but does specify that the conviction is for a class C felony. (Doc. 131-1 in

Case No. 1:11-cr-41.) However, pursuant to the 2002 statute, an aggravated assault under subdivisions (a)(1), (b), or (c) qualifies as a class C felony. Tenn. Code Ann. § 39-13-102(d)(1) (2002). Therefore, the judgment sheds no light on whether Petitioner was convicted of a qualifying variant of the offense or a non-qualifying one.

Because it is unclear from the documents in the record whether Petitioner was convicted under any specific prong of the statute, the Court will hold a limited evidentiary hearing on this issue.[2][3]

### b. Failure to Object to Sentence in Light of Statutory Maximum

Petitioner also argues that his counsel was ineffective for failing to object to his sentence on the ground that it exceeded the statutory-maximum term. (Doc. 1, at 4–5, in Case No. 1:19-cv-376.) Pursuant to 18 U.S.C. § 924(a)(2), any person convicted of violating 18 U.S.C. § 922(g) shall be "imprisoned not more than 10 years." Upon his resentencing, Petitioner received a sentence of 118 months' incarceration, followed by three years of supervised release. (Doc. 175, at 2–3, in Case No. 1:11-cr-41.) Petitioner argues that the three-year term of

---

[2] In advance of the hearing, the parties are encouraged to review this Court's discussion in *Dillard v. United States* concerning the result when the available *Shepard* documents do not indicate the precise crime of conviction. *See* 420 F. Supp. 3d at 736–39.

[3] The Government argues that Petitioner's aggravated-burglary conviction also qualifies as a crime of violence. (Doc. 13, at 7, in Case No. 1:19-cv-376 (citing *Brumbach v. United States*, 929 F.3d 791, 794 (6th Cir. 2019)).) In *Brumbach*, the Sixth Circuit held that Tennessee aggravated burglary is a "violent felony" for the sake of the ACCA. 929 F.3d at 794. Importantly, however, the court in *Brumbach*—as well as the Supreme Court in *United States v. Stitt*, 139 S. Ct. 399 (2018) [hereinafter *Stitt II*]—found that Tennessee aggravated burglary qualified as a violent felony under the ACCA's enumerated-offenses clause, which specifically lists "burglary" as an enumerated offense. *Brumbach*, 929 F.3d at 793; *see also Stitt II*, 139 S. Ct. at 404. The enumerated-offenses clause of the guidelines, unlike that of the ACCA, does *not* include burglary. *See* U.S.S.G. § 4B1.2(a)(2). Moreover, the Tennessee aggravated-burglary statute does not qualify as a crime of violence under § 4B1.2's use-of-force clause either, because the offense can be completed without the use of force. *See* Tenn. Code Ann. §§ 39-14-402, 39-14-403. Accordingly, Petitioner's aggravated-burglary conviction cannot be used to enhance his base offense level under § 2K2.1.

supervised release punishes him in excess of the 120-month statutory maximum. (Doc. 1, at 4–5, in Case No. 1:19-cv-376.) However, the ten-year maximum applies only to the term of imprisonment. *See* 18 U.S.C. § 924(a)(2). This maximum term of imprisonment is separate and apart from the maximum term of supervised release. *See United States v. Hughley*, 192 F. App'x 447, 451 (6th Cir. 2006). Because violation of 18 U.S.C. § 922(g) is a Class C felony, the statutory maximum term of supervised release is three years. *See* 18 U.S.C. § 3583(b)(2); *Hughley*, 192 F. App'x at 451–52. Therefore, because Petitioner's incarcerative sentence did not exceed ten years and because his term of supervised release did not exceed three years, no part of his sentence runs afoul of the statutory maximum. Petitioner's resentencing counsel was not ineffective for failing to raise this argument, as it would have had no impact on the outcome of Petitioner's resentencing.

### c. Failure to Raise Prosecutorial Misconduct

Finally, Petitioner argues that his counsel was ineffective for failing to raise the issue of prosecutorial misconduct. (Doc. 1, at 6–7, in Case No. 1:19-cv-376.) The Court begins its analysis by noting that "[m]ost claims of prosecutorial misconduct address the prosecutor's conduct at trial rather than at sentencing." *United States v. Coker*, 514 F.3d 562, 568 (6th Cir. 2008) (but noting that "[t]he few misconduct claims addressing conduct at a sentencing hearing usually deal with the prosecutor's comments at the sentencing phase of a death penalty case, not the sentencing hearing in a run-of-the-mill [criminal proceeding]"). Not every prosecutorial error amounts to prosecutorial misconduct, and, to succeed on such a claim, the petitioner must show that he or she was prejudiced by the prosecutor's actions. *Id.* To determine whether certain statements rise to the level of prosecutorial misconduct, the Court first determines whether the relevant statement was improper, and, if it was, the Court then determines "whether

the statement was so 'flagrant' as to warrant reversal." *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008) (citing *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999)). In evaluating whether an improper statement was so flagrant as to warrant reversal, the Court considers:

> (1) whether the prosecutor's remarks or conduct tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately made; and (4) the overall strength of the evidence against the accused.

*Id.* (quoting *Francis*, 170 F.3d at 549–50).

Petitioner claims that the prosecutor improperly referenced unproven and dismissed charges that were irrelevant to his conviction at his resentencing hearing. (Doc. 1, at 6–7, in Case No. 1:19-cv-76.) Specifically, Petitioner argues that the prosecutor improperly raised and mischaracterized his interaction with a law enforcement officer that occurred prior to the conduct giving rise to his federal felon-in-possession conviction, concerning which there were pending state-court charges. (*Id.*; *see* Doc. 168, at 5, 9, in Case No. 1:11-cr-41.) The prosecutor made the following relevant statements during the resentencing hearing:

> Turning to the 3553(a) factors, we first review the nature and circumstances of the offense. The defendant was a felon in possession. When he was caught with the gun, he wrestled the officers that were attempting to take him into custody. He refused to acknowledge them at first. And then actively refused to be taken into custody. He fought the officers in a small camper trailer. And it wasn't until after the fact that they discovered the gun was hidden under a mattress in a corner of the camper that the defendant had lunged for. And that was proven during the course of trial.
>
> . . .
>
> A sentence here needs to promote respect for the law. Two days prior to the defendant's felon in possession, he was blue-lighted by a local law enforcement officer, and he ran. He didn't just run, but he endangered other cars on the road. And the officer called off the pursuit because the defendant's behavior was causing—was putting in danger other members of the public.
>
> . . .

> But finally, as I pointed out in my response yesterday, the defendant, the day
> before he committed this offense, assaulted a police officer in Madisonville.
> Officer Bill Lewis was trying to take the defendant into custody for the offense
> that he had committed the day prior, the evading arrest. The defendant fought
> with the officer, eventually knocked him to the ground with a car door, and ran
> him over, causing him serious injuries, causing him broken bone and a permanent
> disability that has rendered him on desk duty, light duty, ever since.

(Doc. 182, at 8–11, in Case No. 1:11-cr-41.)

Petitioner's prosecutorial-misconduct argument fails, because any statements that could be considered improper were not so flagrant as to warrant reversal. *See Henry*, 545 F.3d at 376. Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the background,
> character, and conduct of a person convicted of an offense which a court of the
> United States may receive and consider for the purpose of imposing an
> appropriate sentence.

The Court may even consider conduct for which he has been acquitted or charges that have been dismissed. *See United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) ("So long as the defendant receives a sentence at or below the statutory ceiling set by [the crime of conviction], the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range.").

Most of the statements concerning the circumstances of the arrest are supported by the trial record. (*See* Doc. 116, at 6–13, 29, 39–40, in Case No. 1:11-cr-41 (testimony of responding officers).) The only inconsistency in the prosecutor's summary of the events is his statement that Petitioner "wrestled" the officers who took him into custody. According to the trial testimony, Petitioner resisted the arrest, but the responding law-enforcement agents tasered, rather than wrestled, him into submission. (*See id.*) To the extent that this statement was improper, the Court does not find that it was so flagrant as to warrant reversal. Importantly, the remark was isolated and did not prejudice Petitioner. At the resentencing hearing, the undersigned

specifically stated that he would not consider the prosecutor's description of the events leading up to the arrest:

> With regard to the nature and circumstances of the offense, I'm going to—Mr. Woods, I don't doubt that what you said about the struggle is accurate. I'm going to assume the best, though, for Mr. Locke, because I don't think I have that [trial transcript] in front of me. I have not personally reviewed the record, the trial transcript from a few years ago. So I'm going to—with regard to the nature and circumstances of the offense, I'm just going to proceed with the understanding that this particular offense was unremarkable either way, either toward being serious or less serious.

(Doc. 182, at 13, in Case No. 1:11-cr-41.)

Because the majority of statements by the prosecutor were not improper and the statements by the prosecutor were not so flagrant as to warrant reversal, Petitioner does not have a meritorious prosecutorial-misconduct claim and Petitioner was not prejudiced by his counsel's failure to raise prosecutorial misconduct.

### III. CONCLUSION

Petitioner's motion requesting the status of his § 2255 motion (Doc. 197) is **GRANTED** to the extent that this memorandum opinion responds to his § 2255 motion. However, Petitioner's motion for a new trial (Doc. 185) is **DENIED**, and his § 2255 motion (Doc. 196) is **DENIED IN PART** with respect to his arguments that his counsel was ineffective for failing to object to his criminal-history calculation, failing to raise a double-jeopardy objection, failing to object to his sentence in light of the statutory maximum, and failing to raise prosecutorial misconduct.

It is further **ORDERED** that an evidentiary hearing is hereby **SET** for **November 6, 2020** at **2:00 p.m.** in Courtroom 3 at the U.S. Courthouse, 900 Georgia Avenue, Chattanooga Tennessee. The hearing shall be limited to Petitioner's argument that his 2002 Tennessee aggravated-assault conviction does not qualify as a "crime of violence" for the purposes of

U.S.S.G. § 2K2.1.  The Court hereby **APPOINTS** Hilary Hodgkins to represent Petitioner at the hearing.

**SO ORDERED.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**